ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MAYRA DÍAZ NAVARRO<br><br>RECURRENTE<br><br>v.<br><br>ERC ENGINEERS PR, INC.;<br>EDGARDO ROMERO<br>CASTELLANO<br><br>RECURRIDOS | KLRA202500057 | *Revisión Administrativa* procedente del Departamento de Asuntos al Consumidor<br><br>Caso Núm.:<br>ARE-2024-0006230<br><br>Sobre:<br>Incumplimiento de contrato, Obras de construcción |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Díaz Rivera y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Compareció la Sra. Mayra Díaz Navarro (en adelante, "señora Díaz Navarro" o "recurrente") mediante recurso de revisión administrativa presentado el 23 de enero de 2025. Nos solicitó la revocación de la *Resolución* emitida el 20 de noviembre de 2024, notificada al día siguiente, por el Departamento de Asuntos del Consumidor (en adelante, "DACO"). En esa *Resolución,* el DACO desestimó la querella presentada contra el Sr. Edgardo Romero Castellano (en adelante, "señor Romero Castellano") y decretó la resolución del contrato otorgado entre la señora Díaz Navarro y ERC Engineers PR, Inc. (en adelante, "ERC").

Por los fundamentos que expondremos a continuación, **se confirma** en parte la *Resolución* recurrida y **se modifica** en parte. En consecuencia, **se devuelve** para la continuación de los procedimientos conforme a lo aquí dispuesto.

---

[1] Mediante la Orden Administrativa OATA-2025-018 emitida el 10 de febrero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Camille Rivera Pérez.

Número Identificador
SEN2025_____

**-I-**

El caso de epígrafe tuvo su génesis, el 12 de abril de 2024, cuando la señora Díaz Navarro presentó *Querella* ante DACO contra ERC y, su representante, el señor Romero Castellano.[2] Allí alegó que había otorgado un contrato con ERC a través del señor Romero Castellano para la construcción de una residencia de hormigón de dos plantas por un costo total de $389,000.00 durante un término de 51 semanas. Argumentó que, conforme fue acordado, pagó el 25% del costo total de la obra —esto es, $97,250.00— para la compra de los materiales de construcción de la primera fase. No obstante, adujo que el contratista no compró los materiales necesarios para la obra ni completó la primera fase de construcción, la cual consistía en construir el caparazón de hormigón (cimentos, piso, piso intermedio y techo). Además, alegó que el contratista abandonó la obra, se llevó los materiales que estaban en la propiedad, así como, su anuncio y no contestó llamadas ni mensajes. Asimismo, arguyó que el señor Romero Castellano ni tenía sus credenciales al día en DACO ni renovó la póliza del Fondo de Seguro del Estado. Por último, alegó la obra dejada en el solar fue estimada en $34,044.93 y solicitó como remedió la devolución de 63,205.07 del dinero pagado.

El 30 de abril de 2024, ERC instó una *Moción en solicitud de remedio* mediante la cual solicitó la desestimación de la *Querella* contra el señor Romero Castellano, ya que no actuó en su capacidad personal sino a nombre de la corporación.[3]

Luego de varios trámites, el 9 de septiembre de 2024, DACO celebró la vista administrativa en su fondo. Dado a que ni ERC ni el señor Romero Castellano comparecieron a la vista, DACO les anotó la rebeldía, aunque su representante legal se personó posteriormente. Durante la vista, la señora Díaz Navarro presentó como evidencia

---

[2] Apéndice de la recurrente, anejo 1, págs. 1-4.
[3] *Id.*, anejo 5, págs. 12-15.

testifical su propio testimonio y, como evidencia documental lo siguiente: (i) Exhibit 1, contrato de servicios para los trabajos de construcción; (ii) Exhibit 2, plano donde se hizo la representación de cómo quedaría el caparazón sin ventanas; (iii) Exhibit 3A al 3G, un total de siete fotografías de la residencia; (iv) Exhibit 4, cheque emitido por la señora Díaz Navarro; (v) Exhibit 5, certificación del Colegio de Ingenieros y Agrimensores.

Así las cosas, DACO emitió *Resolución* el 20 de noviembre de 2024, notificada al día siguiente.[4] Aquilatada la prueba presentada, DACO hizo veintiún (21) determinaciones de hechos, entre las aquí pertinente, las siguientes:

1. El querellado ERC Engineers PR Inc. (en adelante ERC Engineers) es una corporación dedicada a realizar trabajos de construcción. Su dueño o presidente es Edgardo Romero Castell[o].

2. El 23 de junio de 2022 la querellante Mayra Díaz firmó un contrato con el querellado ERC Engineers para la construcción de una casa de vivienda de dos niveles en la urbanización Reparto Roselló en Manatí, PR.

3. Las partes acordaron, conforme a la cláusula "SEGUNDA" del contrato, que el tiempo estimado para completar los trabajos de movimiento, construcción y terminaciones de la obra sería de 51 semanas a partir de la firma del contrato y visto bueno del banco.
[…]
8. El mismo día 23 de junio de 2022 la querellante le pagó al querellado ERC Engin[e]eres la suma de $97,250.00, correspondiente al pronto requerido del 25% del precio de la obra. El pago fue realizado mediante cheque emitido a nombre de ERC Engineers PR Inc.

9. El querellado ERC Engineers comenzó a realizar los trabajos de construcción. Los materiales comprados para la obra estaban ubicados en un vagón propiedad de ERC Engineers y que el querellado tenía en el área de la obra para dicho propósito.

10. El querellado ERC Engineers le enviaba a la querellante periódicamente informes del progreso de la obra.

11. Transcurrió el tiempo y luego de transcurridas las 51 semanas la querellante aún no tenía aprobación alguna de un préstamo hipotecario para el financiamiento de la obra y la continuación de los trabajos, conforme estipulado en el contrato.

12. No existe evidencia ni la querellante demostró haber realizado gestiones con alguna institución bancaria para

---

[4] *Id.,* anejo 10, págs. 48-58.

la aprobación de un préstamo hipotecario para el financiamiento de la obra.

13. En o allá para julio de 2023 el querellado ERC Engineers dejó de trabajar en la obra y a su vez se llevó el vagón de su propiedad donde tenía los materiales sin usar que estaban pendientes para la continuación de la obra.
[...]
15. No existe evidencia ni la querellante demostró fehacientemente el estado de la obra que el querellado llegó a realizar o en qué etapa de construcción se encontraba ni el valor correspondiente o costo estimado de lo construido. No existe prueba pericial al respecto.

16. No existe evidencia ni la querellante demostró su alegación de que el querellado no terminó labores correspondientes a la primera etapa de la obra.
No se presentó prueba sobre las alegadas labores que no se realizaron de la primera etapa.

17. No existe evidencia ni la querellante demostró su alegación en querella sobre que el querellado no compró los materiales necesarios para la obra con el dinero pagado.

18. No existe evidencia ni la querellante demostró las alegadas facturas fraudulentas que reclamó en la querella.

19. No existe evidencia ni la querellante demostró que el querellado haya realizado cambios al proyecto por cuenta propia, según alegó en la querella.

20. No existe evidencia ni la querellante demostró los procesos o costos relacionados a su alegación en la querella sobre gastos de renovación de pólizas de seguro del estado.

21. No existe evidencia de un desglose de materiales ni la querellante demostró el valor o costo de los materiales que habían sido comprados y que el querellado no llegó a usar en la continuación de la obra debido a que se los llevó cuando dejó de continuar la obra.[5]

Considerando lo anterior, DACO desestimó la *Querella* contra el señor Romero Castellano por entender que el contrato suscrito por la señora Díaz Navarro fue la entidad corporativa. Asimismo, determinó que, ante la ausencia de prueba fehaciente sobre las alegaciones de la *Querella*, procede la resolución del contrato. En consecuencia, ordenó a ERC a realizar lo siguiente: (i) someter un informe de gastos o facturación sobre la obra, (ii) prorratear lo pagado correspondiente al trabajo realizado, y (iii) devolver el restante del pago conforme a la facturación.

---

[5] *Id.*, anejo 10, págs. 48-51.

En cumplimiento de orden, el 4 de diciembre de 2024, ERC presentó *Moción en cumplimiento de orden e informe de gastos conforme ordenado.*[6] Allí alegó que no adeuda cantidad ninguna a la señora Díaz Navarro, ya que había aportado de sus reversas la cantidad de $40,889.33 adicional al depósito recibido.

En desacuerdo, el 10 de diciembre de 2024, la señora Díaz Navarro instó *Moción de reconsideración.*[7] Sostuvo que, las fotos presentadas y admitidas como evidencia en la vista administrativa, reflejan la existencia de una estructura abandonada e incompleta que carece de techo, lo cual era parte de la primera fase de construcción (cimentos, piso, piso intermedio y techo). Además, señaló que esa primera fase no establecía como requisito o condición obtener un financiamiento, por lo que, DACO no debió concluir que la señora Díaz Navarro incumplió con el contrato. Alegó, a su vez, que durante la vista administrativa no se le permitió presentar el informe pericial del Ing. Eduvar Adames Duran sobre las facturas de gastos sometidas por el ERC.

El 12 de diciembre de 2024, ERC presentó *Moción en oposición a reconsideración presentada por la parte querellante y solicitud de reconsideración en cuanto a orden.*[8] Allí argumentó que el alegado informe pericial no fue anunciado ni notificado conforme a la Regla 20.6 del Reglamento sobre procedimientos adjudicativos de DACO. Además, adujo que el caso fue sometido sin incluir documentos que sustentaran las alegaciones de la *Querella* en violación a la Regla 7.1 (f) del referido Reglamento. En cuanto a la responsabilidad del señor Romero Castellano, sostuvo que no hay evidencia que de que este haya actuado en su calidad personal, sino que, se desprende

---

[6] *Id.,* anejo 11, págs. 59-61.
[7] *Id.,* anejo 15, págs. 69-86.
[8] *Id.*, anejo 16, págs. 87-94.

tanto del contrato como del cheque, las transacciones fueron con la corporación.

Transcurrido el término para que DACO acogiera la solicitud de reconsideración, el 23 de enero de 2025, la señora Díaz Navarro acudió ante este Tribunal mediante recurso de epígrafe y señaló los errores siguientes:

> ERRÓ EL HONORABLE FORO ADMINISTRATIVO EN SU INTERPRETACIÓN DE LAS CL[Á]USULAS CONTRACTUALES.
>
> ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL DETERMINAR QUE DE ACUERDO CON LAS CLAUSULAS CONTRACTUALES, EL ABANDONO DE LA OBRA DE CONSTRUCCIÓN FUE RESPONSABILIDAD ÚNICA DE LA RECURRENTE.
>
> EN LA ALTERNATIVA Y SIN RENUNCIAR A LOS PRIMEROS DOS SEÑALAMIENTOS, ERRÓ EL HONORABLE FORO ADMINISTRATIVO AL NO DISPONER DE UN MECANISMO ADECUADO PARA QUE LA PARTE APELADA CUMPLA CON SU DEBER DE RENDIR CUENTAS SOBRE EL ESTADO DE LA OBRA DE CONSTRUCCIÓN Y PROVEER LA EVIDENCIA QUE ACREDITASE COMO EL CONTRATISTA UTILIZÓ LA CANTIDAD DE $97,250.00 PAGADOS POR LA RECURRENTE.

Así las cosas, el 1 de abril de 2025, la recurrente presentó *Moción en cumplimiento de orden* mediante la cual anejó la *Transcripción de Vista* estipulada por las partes. En consecuencia, el 21 de mayo de 2025, la recurrente instó su *Alegato Suplementario*.

Por su parte, el 10 de junio de 2025, ERC presentó su *Oposición a revisión administrativa*.

Transcurrido el término dispuesto en la Regla 63 del Reglamento de este Tribunal de Apelaciones[9], sin que el señor Romero Castellano presentara su alegato en oposición, damos por perfeccionado el recurso y procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Revisión administrativa**

---

[9] Véase, Regla 63 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 83-84, 215 DPR __ (2025).

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Entendiéndose que la evidencia sustancial "es aquella prueba relevante que 'una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020) citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004). Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* supra, pág. 77. De lo contrario, los tribunales apelativos

deben conceder gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114.

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez et al. v. DACo,* 2025 TSPR 56, pág. 28; 216 DPR ___ (2025). Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia administrativa está dentro del marco de sus facultades estatutarias. *Id.* Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.,* supra, 839.

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. DACO y el Reglamento Núm. 8034**

La Ley Núm. 5 de 23 de abril de 1973, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341, le permite a este ente administrativo "adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho". 3 LPRA sec. 341e(d); *Ortiz Rolón v. Armando Soler Auto Sales, Inc. et al.,* 202 DPR 689, 696 (2019); *Amieiro González v. Pinnacle Real Estate Home Team,* 173 DPR 363, 372 (2008). Por esto, el DACO debe cerciorarse de que se cumplan con todas las leyes vinculadas a los derechos de los consumidores. 3 LPRA sec. 341e (d).

El Artículo 6 de la Ley Núm. 5, *supra,* instaura los poderes delegados al DACO, algunos de los cuales son:

> (c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía [...]

> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios aptos conforme a derecho, disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones.

*Id.*, sec. 341e.

Asimismo, el DACO deberá "establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento". *Id.*

Para integrar las disposiciones de la ley reseñada, el DACO aprobó el Reglamento Núm. 8034 de 14 junio de 2011 del Departamento de Asuntos del Consumidor, conocido como "Reglamento de Procedimientos Adjudicativos" (en adelante, "Reglamento Núm. 8034"). Este tiene la finalidad de establecer un procedimiento uniforme para la adjudicación de las querellas presentadas ante DACO.

La Regla 4(f) define a un consumidor como ""[t]oda persona natural, que adquiere o utiliza productos o servicios como destinatario final". Véase, Reglamento Núm. 8034, Regla 4(f), pág. 3. Esto armoniza con la Regla 4(u), la cual conceptualiza al querellante como el ""[c]onsumidor o representante autorizado que reclama un derecho o servicio en su capacidad personal". *Id.,* Regla 4(u), pág. 5. Es decir, un consumidor perjudicado puede presentar una querella ante el DACO. A su vez, la Regla 4(t) precisa que una querella es una:

> Reclamación presentada por un consumidor o su representante autorizado solicitando que le sea reconocido un derecho y concedido un remedio. En adición, es una acción iniciada por el Departamento, para hacer cumplir las leyes y reglamentos, e imponer multas o sanciones.

*Id.,* Regla 4(t), pág. 3.

El proceso de instar una reclamación con el DACo está expuesto en la Regla 5.1 del Reglamento Núm. 8034: "[t]oda querella se inicia y consulta del querellante o del personal del Departamento, donde se expresan los hechos que motivan la reclamación." *Id,* Regla 5.1, pág. 6. En particular, la Regla 7 del Reglamento Núm. 8034, establece la información que debe contener toda querella que sea presentada ante DACO. En lo pertinente al caso de epígrafe, el inciso (f) de la Regla 7.1 requiere que la querella contenga "copia de todo documento que sirva de apoyo a su alegación, así como de todo documento que considere ofrecer en evidencia, sin perjuicio de producir documentos adicionales más adelante durante el

procedimiento". *Id.,* Regla 7.1 (f), pág. 8. Entendiéndose que la evidencia sustancial es aquella "relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Id.,* Regla 4(i), pág. 3.

Por otra parte, la Regla 20 del precitado Reglamento atiende lo pertinente a las vistas administrativas celebradas por DACO. Allí se establece que cualquiera de las partes, durante la vista administrativa, "podrán presentar aquella evidencia documental y testifical incluyendo evidencia de carácter técnico y pericial". *Id.,* Regla 20.5, pág. 24. No obstante, establece que aquella parte que interés presentar la evidencia testifical de un perito "deberá notificar a la otra parte y al Departamento con no menos de treinta (30) días con antelación a la vista administrativa y además someter copia del informe pericial". *Id.,* Regla 20.6, pág. 24.

En cuanto a la resolución de la querella en sus méritos, el Reglamento Núm. 8034 dispone que "contendrá una relación de la determinación de hechos probados, la cual se ajustará y tendrá apoyo en el expediente del procedimiento, conclusiones de derecho, y dispondrá lo que en Derecho proceda para su ejecución mediante una orden e incluirá los apercibimientos para solicitar revisión judicial". *Id.,* Regla 26.1, pág. 28.

Ahora bien, relativo a la concesión de remedios, la Regla 27.1 autoriza a DACO otorgar el remedio que en derecho proceda aun cuando no haya sido solicitado por las partes. Sin embargo, aclara que cuando el remedio otorgado en la resolución sea una orden de hacer o cumplir con un acto determinado, deberá indicar el importe del valor monetario de la orden. *Id.,* Regla 27.1, pág. 28. Lo anterior será necesario siempre que el valor monetario surja del expediente o se pueda tener conocimiento administrativo. *Id.* La disposición de la Regla 27.1 tiene la finalidad de garantizar el cumplimiento de la orden administrativa y, en la alternativa, garantizar compensación

monetaria por incumplir con la misma. *Id.* Asimismo, la Regla 27.2 dispone como sigue:

> Toda resolución que ordene el pago de dinero, ordenará también el pago de intereses, computados desde que se ordenó dicho pago de dinero y hasta que, éste sea satisfecho, al tipo que fija la ley para sentencias judiciales. Además, se podrá incluir un apercibimiento al querellado que de no cumplir con lo ordenado se podrá enviar su nombre y otra información pertinente a las agencias de información de crédito ("Credit Bureau").

*Id.,* Regla 27.1, págs. 28-29.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

El presente caso cuenta con tres (3) señalamientos de error. A continuación, atendemos el primer y segundo señalamiento de error de forma conjunta por estar relacionados entre sí. En síntesis, ambos errores versan sobre la interpretación contractual efectuada por DACO. La recurrente alegó que la cláusula contractual relacionada a la primera fase de construcción no estaba sujeta a la obtención de un préstamo financiero. Por lo cual, sostuvo que la culminación de la primera fase de la obra no dependía de la responsabilidad de la señora Díaz Navarro, sino de ERC.

Por su parte, ERC argumentó que la recurrente no probó su caso, a pesar de tener la carga de la prueba. Señaló que no presentó prueba documental o testigo pericial que probara sus alegaciones en la *Querella.* Por lo cual, sostuvo que DACO no cometió los errores alegados.

Según señalamos en el acápite II de esta *Sentencia,* el DACO es la agencia gubernamental encargada de procesar las reclamaciones que pueda tener un consumidor sobre la calidad de los productos adquiridos o servicios recibidos. Es deber de esta entidad el investigar la queja recibida y asumir una postura que vindique los derechos del consumidor. No obstante, es

responsabilidad del consumidor reclamante cumplir con las exigencias del Reglamento Núm. 8034, el cual tiene la finalidad de uniformar el procedimiento de estas solicitudes. Este reglamento exige que toda querella presentada ante DACO, así como en la celebración de la vista administrativa en su fondo, el consumidor reclamante debe presentar toda la evidencia documental que sirva para apoyar sus alegaciones. Incluso, el precitado reglamento permite la presentación de evidencia pericial con la salvedad de que sea notificada treinta (30) días antes de la celebración de la vista administrativa. Tales exigencias vislumbran formar un expediente con evidencia suficiente para que la agencia administrativa, en este caso, DACO pueda formular unas determinaciones hechos en conformidad con la LPAU. Entendiéndose que esa "evidencia sustancial" es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Véase, Reglamento Núm. 8034, Regla 4(i), pág. 3; *Capó Cruz v. Planificación et al.,* supra, pág. 591.

En el caso ante nuestra consideración, la recurrente presentó una *Querella* contra ERC y, su representante, el señor Romero Castellano. Allí hizo una serie de alegaciones basadas en un contrato que otorgó con estos para la construcción de una residencia de hormigón de dos plantas. En vista de la normativa que explicamos, analizamos las alegaciones de la recurrente con la evidencia presentada. Veamos.

De entrada, señalamos que la recurrente no adjuntó con la *Querella* ninguna evidencia documental que apoyara sus alegaciones. Ahora bien, durante la vista administrativa en su fondo, la recurrente presentó —como Exhibit número 1— el referido contrato del cual se desprende que fue otorgado con la corporación ERC a través de su represente, el señor Romero Castellano. Véase,

Apéndice de la recurrente, anejo 9(A), pág. 23; *Transcripción de Vista* (en adelante, TPO), pág. 12.

En relación con el referido contrato, la recurrente alegó que le pagó al señor Romero Castellano la cantidad de $97,250.00 para la compra de los materiales de la primera fase de la construcción de la residencia, lo cual representa el 25% del costo total de la obra pactada. Para sustentar lo anterior, presentó —como Exhibit número 4— copia del cheque con el cual efectuó el pago a favor de ERC. Véase, Apéndice de la recurrente, anejo 9(D), pág. 45; TPO, págs. 24-25.

Asimismo, la recurrente hizo varias alegaciones relacionadas al señor Romero Castellano.

Por un lado, alegó que el señor Romero Castellano no era ingeniero autorizado y para demostrarlo presentó —como Exhibit número 5— una certificación del Colegios de Ingenieros y Agrimensores. De la referida certificación, surge que el señor Romero Castellano no está registrado ni autorizado para ejercer la profesión de la ingeniería en Puerto Rico. Véase, Apéndice de la recurrente, anejo 9(E), pág. 47; TPO, págs. 24-25.

De otro lado, la recurrente alegó que el señor Romero Castellano no tenía sus credenciales al día en DACO y no renovó el fondo de seguro del estado. Además, alegó que no compró los materiales suficientes para construir la obra pactada y no completó la primera fase de la construcción dentro del término de 51 semanas acordado. Igualmente, alegó que abandonó la obra, se llevó los materiales que están en un vagón y no contestó llamadas ni mensajes de texto. Incluso, alegó que el señor Romero Castellano sometió facturas fraudulentas por corresponder a otros proyectos de construcción. Argumentó, por último, que la obra dejada en el solar tiene un valor de $34,044.93. Con la intención de apoyar todas las alegaciones anteriores, presentó su propio testimonio y una

visualización de la propiedad terminada (Exhibit número 2) junto a siete (7) fotografías de la residencia abandonada (Exhibit número 3). Véase, Apéndice de la recurrente, anejo 9(B) y 9(C); TPO, págs. 18-21. Además de lo anterior, la recurrente intentó presentar un documento tipo informe pericial del Ingeniero Eduvar Adames Durán. Véase, Apéndice de la recurrente, anejo 15, pág. 82; TPO, págs. 55-57. No obstante, DACO correctamente entendió que era prueba de referencia por no ofrecer el testimonio del Ingeniero Eduvar Adames Durán y, además, señalamos que esta evidencia pericial no fue anunciada treinta (30) días antes de la celebración de la vista administrativa conforme exige el Reglamento Núm. 8034, *supra.*

Tras ejercer nuestras funciones revisoras, concluimos que la *Resolución* recurrida responde a una adecuada interpretación del expediente ante nos. Habiendo examinado sosegadamente el expediente, nos resulta evidente que no tenemos evidencia pericial relacionada a la etapa de construcción en la se encuentra la obra ni el valor correspondiente de la estructura existente. De igual manera, no consta en el expediente un desglose de las labores que faltaron para completar la primera fase de la construcción ni los materiales que faltaron por comprar. Ni siquiera se presentó un desglose de los materiales que alegadamente se llevó el señor Romero Castellano ni el valor que estos ostentaban. Incluso, en el expediente, no obra evidencia relacionada a las facturas o informes fraudulentos ni de las alegadas conversaciones por mensajes de textos. Tampoco tenemos el beneficio de alguna descripción o evidencia de los gastos relacionados a la póliza de seguro del estado ni de las gestiones realizadas por la recurrente para obtener un préstamo hipotecario para el financiamiento de la obra.

De hecho, así lo admite la recurrida un sinnúmero de veces en su contrainterrogatoria durante la vista administrativa en su fondo, a saber:

P    ¿Usted proveyó evidencia de eso aquí?
R    No, pero la puedo proveer.
P    Mire… Es que su turno de pasar prueba ya concluyó. Usted..

[…]

P    ¿Usted trajo esa evidencia, la presentó aquí:
R    Ahora mismo, no.[10]

[…]

P    ¿Usted trajo evidencia aquí del pago que usted hizo en el Fondo del Seguro del Estado?
R    Lo gestionó Edgardo Romero con…
[…]
P    ¿Le enviaron una carta, le dijeron: "Mire, tiene que volverlo a pagar"?
R    Me dijeron…
P    ¿No…?
R    …que tengo que volverlo a pagar.
P    Le dijeron. ¿Pero no le enviaron una carta, una certificación, "Mire, lo que debe es tanto"? Nada de eso se lo enviaron, ¿verdad que no?
R    Eso fue vía telefónica.
P    ¡Ah! ¿Se hizo vía telefónica? Mire, usted, la realidad es que no trajo ninguna evidencia de esa cantidad que usted está reclamando.
R    Hay evidencias.
P    No, mire… Usted, en su turno de pasar la prueba del dinero que esta está diciendo, usted no la presentó, ¿verdad que no?
R    No la presenté, pero…
P    No la…
R    … hay evidencias.[11]

[…]

P    Así que, usted lo que hizo fue que testificó que le deben $40,000.00.
R    Testifiqué que tengo…
P    Lo está testificando…
R    …a…
P    …después de su turno de presentar prueba. Mire, pero no presentó ninguna evidencia ni desglose de esos $40,000.00.
R    Lo dice la querella.
P    Lo dice la querella porque usted es la que la llenó.
R    Unjú
P    La que…Pero en esa querella tampoco proveyó evidencia alguna, ni desglose, ni listado de, de dónde salen esos $40,000.00, ¿verdad que no?
R    No, no la presenté, Pero lo te…lo te…hice el testimonio.
P    Pero, ¿y tenía los documentos?
R    Tengo los documentos.[12]

---

[10] Véase, TPO, pág. 82.
[11] Véase, TPO, pág. 93-94.
[12] Véase, TPO, pág. 96.

[...]

P   Entonces, mire, o sea, que usted no tiene la forma de evidenciarle a la Examinadora aquí, a la Juez, de dónde salen esos $40,000.00.
R   Tengo forma, tengo los documentos.
P   Sin embargo, en su debido momento, usted no los presentó ni su abogado tampoco, ¿verdad que no?
R   Entiendo que hay, que los tenemos disponibles.
P   Teniéndolos disponibles, en su momento, no los presentó, ¿verdad que no?
R   Ahora no.[13]

[...]

P   Mire, yo le pregunto a usted, ¿cómo usted sabe el costo de esos materiales?
R   El prove...
P   ¿Cómo usted lo sabe?
R   El proveyó los recibos.
P   ¿Cómo usted lo sabe? ¿Sí? ¿Usted tiene esos recibos?
R   Eso es correcto.
P   Sí. ¿Y los tenía desde hace cuándo?
R   Desde que Edgardo me los otorgó...[14]

[...]

P   ...que sí? Sin embargo, no presentó ninguno de esos recibos tampoco en el día de hoy durante su testimonio, ¿verdad que no?
R   No, solamente el estimado del Ingeniero.[15]

En el caso de marras, luego de haber examinado cuidadosa y ponderadamente el expediente ante nuestra consideración, así como la transcripción de la prueba oral, nos resulta inevitable concluir que las determinaciones de DACO están basadas en la prueba desfilada y no en meras conjeturas. Esto es, coincidimos con DACO, en efecto, la recurrida carece de apoyo fáctico y evidenciario para prevalecer en los argumentos que expone sobre este asunto en particular. Destacamos que, conforme el expediente, la recurrida no proveyó la prueba necesaria para mover el criterio judicial pertinente a resolver a su favor, sino que descansó en meras alegaciones. O sea, del expediente del caso surge palmariamente que la recurrente no presentó prueba suficiente para probar su caso. Consecuentemente, razonamos que, los planteamientos esbozados

---

[13] Véase, TPO, págs. 98-99.
[14] Véase, TPO, pág. 101.
[15] Véase, TPO, pág. 102.

por la recurrente son inmeritorios. Habida cuenta de lo anterior, concluimos que el primer y segundo error señalado no fueron cometidos.

Ahora bien, procedemos atender el tercer señalamiento de error. La recurrente alegó que, en alternativa, procede que DACO celebre una vista de cumplimiento de *Resolución* para propiciar la rendición de cuentas de forma efectiva, prorratee las sumas pagadas en función de los trabajos realizados, y devuelva el remanente correspondiente a la señora Díaz Navarro. Esto es, que se les permita a las partes presentar prueba como desgloses de los gastos, facturas, recibos, cronogramas de obra e inventario de los materiales adquiridos y su ubicación. Por su parte, ERC no arguyó nada en su escrito de oposición respecto a lo anterior.

Conforme explicamos en el derecho aplicable, el Reglamento Núm. 8034, *supra,* faculta a DACO para conceder todo remedio que proceda en derecho, aun cuando las partes no lo soliciten. Inclusive, el Reglamento Núm. 8034, *supra,* para garantizar el cumplimiento de una orden de hacer un acto determinado, requiere que DACO indique el valor monetario de lo ordenado siempre que: (i) surja del expediente o (ii) se tenga conocimiento administrativo. De hecho, el Reglamento Núm. 8034, *supra,* requiere que toda orden que requiera el pago de dinero incluya el pago de intereses al tipo que fija la ley para sentencias judiciales. Por lo cual, cumplir con todo lo anterior permite que DACO pueda calcular el pago de los intereses. Sin olvidar que el Reglamento Núm. 8034, *supra,* promueve la solución justa, rápida y económica de las querellas bajo su consideración, lo cual responde a la política pública que cobija a las agencias administrativas sobre el acceso a la justicia y la pronta disposición de los asuntos que contemplan.

Nótese que DACO, en su *Resolución*, decretó la resolución del contrato otorgado entre las partes y, en consecuencia, emitió una orden de hacer determinado acto como sigue:

> Se ordena al querellado ERC ENGINEERS INC. a que, dentro del término de diez (10) días calendarios a partir de la fecha de notificación de esta Resolución, someta a la querellante Mayra Díaz el informe de gastos o facturación determinada a la etapa en que se encontraba la obra al momento de terminar el contrato, realice el prorrateo de lo pagado y correspondiente a los trabajos realizados y devuelva a la querellante Mayra Díaz el restante de lo pago conforme la facturación determinada.

Véase, Apéndice de la recurrente, anejo 10, pág. 55.

Claramente, el proceder de DACO pretende implementar las cláusulas sexta y séptima intituladas como "Terminación del contrato" en el acuerdo otorgado entre las partes, las cuales leen de la siguiente manera:

> **SEXTA: Terminación del contrato:** El contratista puede terminar con la obra siempre y cuando el cliente no cumpla con los acuerdos aquí descritos en cuanto a la compensación y otros.
> En caso de que se aplique la SEXTA, Se estará prorrateando y auditando el expediente de gastos del proyecto para la facturación o devolución correspondiente a la etapa en curso.
> **S[É]PTIMA: Terminación del contrato:** El cliente puede terminar con la obra siempre y cuando el contratista no cumpla con los acuerdos aquí descritos en cuanto a la compensación y otros.
> En caso de que se aplique la S[É]PTIMA, Se estará prorrateando y auditando el expediente de gastos del proyecto para la facturación o devolución correspondiente a la etapa en curso.

Véase, Apéndice de la recurrente, anejo 9(A), pág. 26. (Énfasis en el original).

De entrada, al examinar la *Resolución* de DACO, identificamos que emitió una orden de hacer un determinado acto sin establecer algún valor monetario a lo ordenado en conformidad con el Reglamento Núm. 8034. Ciertamente del expediente no surge evidencia que ratifique algún valor monetario de lo ordenado, lo cual le impide a DACO tomar conocimiento administrativo sobre ello. Sin embargo, tampoco se figura del expediente alguna intención por parte de DACO para dirimir los gastos de la obra de construcción ante su consideración, para una posible facturación o devolución,

según corresponda de acuerdo con lo acordado por las partes. Todo lo contrario, la orden que emitió DACO intima que, aun cuando tiene el asunto ante su consideración, les ordenó a las partes a resolver extrajudicialmente. Es decir, dejó el asunto al arbitrio de las partes. Tanto es así, que basta observar la escueta *Moción en cumplimiento de orden e informe de gastos conforme ordenado* presentada por ERC. Véase, Apéndice de la recurrente, anejo 11, págs. 59-61. Allí, el ERC se limitó a alegar lo siguiente:

### INFORME

3. Se informa conforme las cláusulas resolutorias del contrato, luego de un prorrateo de los gastos a la fecha de junio de 2023, ERC Egineers había aportado de sus reversas la cantidad de **$40,889.33,** por encima del depósito recibido.

4. Lo anterior representa el cumplimiento con la cláusula sexta y sétima del contrato, por lo que se informa que ERC Engineers **no adeuda** cantidad alguna a la Sra. Mayra D[íaz Navarro.

*Id.,* pág. 60 (énfasis en el original).

Palmariamente, ERC descansó en meras alegaciones sin presentar evidencia ni desglosó los gastos que llevaron a la suma de $40,889.33. Esto es, ERC no presentó facturas, recibos o informes que le permitan a DACO dirimir la correspondiente suma de dinero y, así estar en posición para determinar si corresponde alguna devolución de dinero entre las partes.

Así que, este foro revisor concluye que el proceder de DACO no responde a su política pública de garantizar el acceso a la justicia y la pronta disposición de los asuntos ante su consideración. Conforme a la facultad que nos concede la Sección 4.5 de la LPAU, ordenemos la celebración de una vista evidenciaria a los efectos de que las partes puedan colocar en posición a DACO para dirimir la operación de las cláusulas sexta y séptimas del contrato.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma en parte** y se **modifica en parte** la *Resolución* recurrida. En cuanto a orden incluida en la *Resolución,* **se modifica** para que se celebre una vista evidenciaria en la cual ERC deberá presentar evidencia a satisfacción de DACO sobre los gastos relacionados a la construcción de la estructura existente en la Urbanización Reparto Roselló en Manatí, Puerto Rico. Durante la celebración de la vista, DACO deberá garantizar la participación efectiva de las partes conforme a la ley y los reglamentos aplicables.

Completado el trámite antes ordenado, DACO estará en posición para dirimir la operación de las cláusulas sexta y séptima del contrato, y podrá determinar si procede la devolución de algún valor monetario a la señora Díaz Navarro.

En consecuencia, **se devuelve** el caso de epígrafe a la agencia pertinente para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones